**FARMERS CO-OPERATIVE ELEVATOR COMPANY OF DOUGLAS, a Corporation, Plaintiff in Error,**

v.

**Albert DIEVERT, Defendant in Error.**

No. 38449.

Supreme Court of Oklahoma.

Nov. 17, 1959.

Crowley & Musser, Enid, for plaintiff in error.

Hugh Conway, W. E. Crowe, Enid, for defendant in error.

HALLEY, Justice.

Albert Dievert filed this action in the Superior Court of Garfield County against the Farmers Co-Operative Elevator Company, a corporation, to recover damages alleged to have been suffered by him from breach of warranty on the germination capacity of seed wheat sold him by defendant. He prayed for damages in the sum of $874.60. The jury returned a verdict for plaintiff in the sum of $244.33, and defendant has appealed. We shall refer to the parties as they appeared in the trial court.

In appealing from the judgment based upon the verdict of the jury, the defendant submits a single proposition as follows:

The verdict of the jury is not sustained by the evidence, and the trial court erred in not directing a verdict for the defendant and against the plaintiff.

Defendant does not complain of the instructions given by the court, but in its answer denies that it warranted the wheat sold by it to plaintiff to have a germination capacity of 90 per cent, but that the wheat it sold to plaintiff was sold for such uses as he cared to make of it, but admitted that a germination test had been run and showed a 90 per cent germination. Defendant also alleged that if the wheat it sold plaintiff did not germinate, and grow, the real reason for such failure was climatic conditions affecting plaintiff's wheat land before or after sowing and did not occur by reason of any fault of defendant.

It was not denied that soon after plaintiff sowed the seed wheat involved there fell an unusually heavy rain, estimated at from five to ten or twelve inches. Defendant alleged that this rain packed the surface of plaintiff's land and made it impossible for the wheat to reach the surface unless the surface of the soil was broken by harrowing or in some manner breaking the

hard crust, which plaintiff failed to do, but later replanted his land with seed wheat purchased elsewhere, resulting in a late planting and small yield.

Plaintiff alleged and testified that he learned in August, 1955, that defendant was selling seed wheat and talked to its manager who assured him that defendant had seed wheat for sale at its elevator at Douglas, which had a germination capacity of 90 per cent, and that relying upon such representations he agreed to and purchased 65 bushels of Early Triumph seed wheat from defendant at $2.35 per bushel, making a down payment of 50 cents per bushel, and about September 29, 1955, he paid the balance due and received delivery of 51.40 bushels.

Plaintiff alleged and testified that he sowed such wheat on his farm about October 1, 1955; that his land was in favorable condition, but the wheat failed to germinate and come up; that he had a test made for germination which showed only 27 per cent germination; and made a test himself which resulted in the same failure as to germination; plaintiff alleged and testified that defendant breached its warranty as to germination, resulting in the necessity of resowing his land, after defendant's seed wheat failed to germinate, requiring him to rework his land, secure seed wheat from another source, and making his second planting late, which resulted in a smaller crop than would have been harvested had defendant's seed wheat germinated as defendant represented it would.

Plaintiff set out the various items of damages suffered as follows:

"Purchase price of wheat $123.85
Expense of hauling wheat 3.25
Spring-toothing 65 acres of land @ 50¢
 per acre 32.50
Drilling 65 acres of land @ $1.00 per acre 65.00
Diminution of yield, 325 bu. @ $2.00 per bu. 650.00"

■ This being a law action tried to a jury, it is not the duty of the court to weigh the evidence, but it is our duty to examine the evidence to determine whether there is competent evidence to support the findings

of the jury on which the judgment is based. For this reason we have examined the evidence, oral and documentary. Loomer v. Walker, 59 Okl. 44, 157 P. 1055; McClellan v. Palmer, 184 Okl. 216, 86 P.2d 325.

■ We find that the testimony of the plaintiff is competent and supports the finding of the jury, especially when it is supported by the testimony of other witnesses who testified in his behalf. The plaintiff testified positively that when he inquired at defendant's elevator about seed wheat, the manager, Mr. Akin, told him that "We've got plenty of Early Triumph seed wheat for sale right here." When plaintiff asked Mr. Akin what the germination test of the wheat was, he answered that it was 90 per cent and the price $2.35 per bushel. On the check by which plaintiff made a payment on the wheat was the notation, "pd. on 65 bu. seed wheat." Then the plaintiff introduced a copy of The Covington Record, dated August 11, 1955, which says "We also have Triumph Seed Wheat for sale." Plaintiff's exhibit "C", was a check to defendant dated September 29, 1955, for $91.35, with a notation "For seed wheat", and also receipt from defendant that stated "seed wheat."

Plaintiff and other witnesses testified that in the defendant's elevator offices was a printed bulletin which stated "seed wheat germination test 90%." Plaintiff testified that he relied upon the above statements and those of the manager in regard to the germination test of the seed wheat.

No witness disputed plaintiff's testimony that he got only a third of a stand from the wheat purchased from the defendant. Plaintiff examined the wheat after a small portion had come up and found that many grains were rotten and had never even sprouted. The test he had made by the Agricultural Department of the State showed that only about 27% of the wheat would germinate. He made a test of his own with about the same result, and several of his neighbors who planted the same seed wheat got a very light stand even when resowed after the heavy rain.

There is positive testimony that certain farmers, who bought some of the same seed wheat, were asked to return it to the elevator where they would be refunded what they had paid on it.

Plaintiff testified as to the various items of extra expense suffered by him because the seed wheat failed to germinate beyond about 30 per cent.

An employee of defendant in 1955 testified that they not only advertised in The Covington Record and posted a placard in their office that they had seed wheat for sale with a germination test of 90 per cent but also sent post cards to farmers advertising seed wheat for sale.

Mr. Akin, manager of defendant, denied that he told plaintiff a number of things asserted by the plaintiff, but did admit that defendant offered for sale and sold seed wheat during the summer and fall of 1955, and that some of such wheat did fail to germinate and that some purchasers were refunded the purchase price when the wheat failed to germinate for a sufficient stand.

Some of defendant's witnesses testified that the heavy rain after planting was in their opinion, the real cause of plaintiff's failure to get sufficient germination, but there was equally convincing testimony that the seed wheat of defendant had a germination test of about 30 per cent.

 Plaintiff calls our attention to supersedeas bond and prays for judgment thereon. The bond is in the principal amount of $1,000, executed by the defendant as principal and Fidelity & Deposit Company of Maryland, as surety.

In accord with Rule 31 (12 O.S.A. c. 15 Appendix) and plaintiff's request, judgment is here rendered on such bond, against the surety thereon, as well as the defendant in the amount of $244.33, with interest thereon at the rate of 6 per cent per annum from June 15, 1956, together with court costs, until paid; and the trial court is directed to enforce this judgment as if rendered in that court.